Robert H. Heller and Mary V. Heller v. Commissioner.
Heller v. Commissioner
Docket No. 74301.
United States Tax Court
T.C. Memo 1959-238; 1959 Tax Ct. Memo LEXIS 10; 18 T.C.M. (CCH) 1139; T.C.M. (RIA) 59238; December 23, 1959
*10 Held, payments made to Kenneth H. Runyon in 1953 were in payment for services rendered and deductible as business expenses of petitioner's business. Held, further, respondent correctly determined that weekly payments of $100, made by petitioners to Runyon's widow, Mary Jane Runyon, in each of the years 1954 and 1955, were a part of the total purchase price paid by petitioners for an insurance agency acquired from Runyon in 1953 and not deductible as business expenses. Lester M. Ponder, Esq., for the petitioners. Robert E. Johnson, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency
1953
$ 366.78
1954
1,558.40
1955
1,190.32
The only question is whether certain weekly payments made by petitioners constituted a portion of the purchase price of an insurance agency, or were compensation for services rendered or, in the alternative, consideration for a covenant not to compete. Findings of Fact Some of the facts are stipulated, the stipulation being incorporated herein by this reference. Petitioners, husband and wife, *11 reside in Decatur, Indiana. They filed joint Federal income tax returns for the calendar years 1953, 1954, and 1955 with the director of internal revenue at Indianapolis, Indiana. For convenience, Robert H. Heller will sometimes hereinafter be referred to as petitioner. Petitioner entered the real estate business in 1941 and the insurance business in 1945. Doing business as the Heller Insurance Agency he sold principally fire and casualty insurance and a small amount of life insurance. In 1953 Kenneth H. Runyon, the owner of the Decatur Insurance Agency, asked petitioner to come to his office. They discussed the difficulties of operating a one-man agency. Finally, Runyon proposed that petitioner purchase his agency and employ him for a few years. Runyon suggested a purchase price of $4,000. Runyon had been engaged in the insurance business since approximately 1940 and had built up outside connections which were valuable to him in obtaining insurance business. Petitioner regarded Runyon as about the best insurance agent in Decatur. It was petitioner's estimate that the net agency commissions of the Decatur Insurance Agency averaged approximately $13,250 for the calendar years *12 1950, 1951, and 1952. On July 17, 1953, petitioner and Runyon entered into a contract of sale whereby Runyon agreed to sell to petitioner his agency business as a going concern, including the good will of the agency, the exclusive right to use the trade name "Decatur Insurance Agency", copies of all insurance policies in force, including dailies (carbon copy of each policy that is written), current dailies, expirations (small card giving the date a policy expires), and steel cabinets containing the expirations and dailies. The purchase price named for these assets was $4,000. Excepted from the sale were cash on hand or in banks, the books of account, accounts receivable, and contingent commissions. Nor did petitioner acquire the life insurance business of the Decatur agency. Paragraph 6 of the contract provided as follows: "6. Seller Retained. The PURCHASERS Desire to retain the services of the SELLER in an advisory capacity, also as an insurance counselor and consultant in the operation of said business for a period of Six years from August 1, 1953, and shall pay to the SELLER at least the sum of $100.00 per week beginning August 1, 1953, and each week thereafter during said *13 period of time. In the event the SELLER retires or is totally disabled or dies at any time during the period covered by this agreement, to-wit August 1, 1959, the PURCHASERS shall continue to make such weekly payments in the sum of $100.00 to the SELLER or his wife, Mary Jane Runyon if she survives him, who shall also act as an insurance advisor and consultant to the PURCHASER, or said sum shall be paid to the SELLER'S heirs, administrators, or assigns in the event that both the SELLER and his wife die prior to August 1, 1959. To secure the payment of the weekly payments the PURCHASERS shall have executed a policy of insurance on the life of Robert H. Heller with the SELLER and his heirs, executor and assigns, beneficiaries thereunder, the premiums for the same to be paid by the PURCHASERS herein. In the event premiums are not paid by the PURCHASERS as they become due, then the SELLER shall have a right to declare this contract null and void, and all payments made hereunder shall be deemed to be liquidated damages and forfeited by the PURCHASERS AND the agency to become the property of the SELLER or the SELLER may elect to bring suit for the recovery of the balance due, or the SELLER *14 may pay the premiums on said policy of insurance and recover the same from the PURCHASERS plus 8% interest thereon." The contract included a covenant that Runyon would not, in Adams County, Indiana, canvass, solicit, or accept any business for any other insurance agency, from any clients of the Decatur agency or engage in the insurance business for a period of three years after leaving petitioner's employ. It was agreed that if Runyon should take over petitioner's business in addition to operating or counseling that of the Decatur Insurance Agency so that petitioner could devote more time to his real estate business or take a vacation, then petitioner would pay him additional money. The transfer of the assets of the Decatur Insurance Agency to petitioner was completed on August 1, 1953. For two or three weeks the agencies were operated separately; then, all the equipment was moved into petitioner's offices. "The Decatur Insurance Agency" and "The Heller Insurance Agency" were maintained as names. Runyon operated the Decatur agency, and for periods of time operated the Heller agency. He was named as manager of both. Runyon's operation of both agencies freed petitioner for real *15 estate work. At the time Runyon entered into the contract with petitioner he knew he was suffering from a fatal disease and could not expect to live a normal life span. He had been advised by his physician to put his house in order. Petitioner did not know of Runyon's condition until shortly before his death on December 9, 1953. Runyon's name was retained on the office windows during the years 1954 and 1955. At the time of the trial of this case the letterhead of the agency remained "Heller and Decatur Insurance Agencies." Pursuant to the contract of sale petitioner paid Runyon $4,000, plus $100 per week until his death. Petitioner also paid Runyon an $100additional per week while Runyon was actively operating the Heller as well as the Decatur agencies. After Runyon's death petitioner paid his widow, Mary Jane, $100 per week during each of the years 1954 and 1955. Petitioner withheld deductions for Federal income tax, social security tax, and unemployment and workmen's compensation insurance from these weekly payments. It was petitioner's belief before the purchase of the Decatur agency that Mary Jane was capable of computing insurance rates. Petitioner later learned that her *16 function had been to type the policies. After Runyon's death she was not asked to render any services to the Heller agency. On a few occasions, when petitioner saw her on the street, she advised him briefly as to matters concerning the Decatur agency. Respondent disallowed deductions claimed for salary and wages on petitioner's income tax returns for the years 1953, 1954, and 1955 in the respective amounts of $1,700, $5,300, and $5,200. Opinion VAN FOSSAN, Judge: The ultimate question is whether the payments of $100 per week, made by petitioner to Kenneth H. Runyon in 1953 and after his death to his widow in 1954 and 1955, constituted part of the purchase price paid by petitioner to Runyon for Runyon's insurance agency. Petitioner contends that the payments were reasonable compensation for services rendered by Runyon or, in the alternative, were consideration paid for a covenant not to compete. Respondent asserts that the payments constituted a portion of the price paid by petitioner for the purchase in 1953 of the Decatur Insurance Agency owned by Runyon. The contract provided that petitioner should pay $4,000 for the going agency business, including good will, exclusive *17 right to use the trade name "Decatur Insurance Agency," copies of all insurance policies in force, expiration cards, and steel cabinets. In addition, petitioner agreed to retain Runyon's services for six years at not less than $100 per week. In the event of Runyon's retirement or disablement the payments were to continue to be made to him, or in the event of his death the payments were to be made to his widow. In case of the death of both Runyon and his wife, the payments were to be made to his heirs, administrators, or assigns. Runyon agreed not to compete for a period of three years after leaving petitioner's employ. To secure the weekly payments petitioner was to execute an insurance policy on his life, naming Runyon as beneficiary. If petitioner failed to pay the premiums on the insurance policy Runyon was to have the right to declare the entire purchase contract null and void and redeem the property or bring suit for the balance due. Or, in the alternative, Runyon could pay the premiums and recover that amount, plus interest, from petitioner. The payments made to Runyon during his life would seem to fall in a different category from those made to his widow after his decease. *18 In our opinion, they are clearly payment for services rendered, reasonable in amount, and accordingly deductible by petitioner as business expenses. Payments to Runyon's widow in 1954 and 1955 are not of the same character. They are not shown in the record to be reasonable payments for services actually rendered. The widow did nothing toward earning such payments. She made no contribution to the success of petitioner's business. As stated above the contract provided that if both Runyon and his widow should die during the six-year period, the payments were to be made to his heirs, executors, or assigns. We deem this provision to be important in the interpretation of the contract and to weigh heavily in support of respondent's determination. Clearly, these payments were not deferred payments for services rendered by decedent or his wife. Equally clearly, this is not a case where an employer, grateful for past services rendered, pays the widow of an officer or employee appropriate sums after the death of such officer or employee. Runyon served petitioner for only four months. As we see it, the provision for payments to the heirs, executors, or assigns strongly points to the conclusion *19 that the payments were not current expenses but were capital expenditures and were part of the consideration for the acquisition of the business itself. Petitioner also contends, as an alternative, that the stipulated payments were in payment for the provision of the contract forbidding Runyon from competing for a period of three years after leaving petitioner's employ. There is nothing in the facts that permits us to conclude that any severable consideration was considered or provided because of the covenant not to compete. Nor is there any standard whatever set up by which to value such covenant. It is only reasonable to conclude that Runyon, facing an early death, would have put little, if any, value on the covenant against competition. The contract assigned no value to such covenant and there is no evidence that amortization of the contract was claimed as a deduction by petitioner. Cf. . Accordingly, we are unable to attribute to the covenant against competition any part of the payments made by petitioner to the widow. The above conclusions leave for consideration whether or not the payments to the widow *20 under the contract were part of the total payment for the business itself and thus were capital expenditures. If we were to peer into Runyon's mind at the time he entered into the contract we would find that he knew that his life span was strictly limited by a malignant disease. He was thinking of retirement and moving to Florida. He had been advised by his physician in 1952 of the fact that he had a fatal disease and that he should put his house in order. In consonance with such advice, Runyon made the first move toward negotiation for the sale of his business to petitioner. He was concerned about provision for his wife and children after his demise. Undoubtedly, despite the provision in the contract that his wife was to act as adviser or consultant, he must have been aware that his wife was not equipped to render valuable services to the purchaser of the business. The dominating thought in Runyon's mind clearly was to protect and provide for his family and in their interest to make the best financial deal possible in the sale of the business. As above noted, the provision of the contract that in the event of the death of Runyon and his wife the payments were to be made to *21 his heirs, executors, or assigns, weighs heavily against petitioner's contention. The fact that petitioner withheld deductions for Federal income tax, social security tax, and unemployment and workmen's compensation insurance from some of the weekly payments is not conclusive. It shows at most the interpretation which petitioner made of the contract. This fact is outweighed by other facts of record which have led us to the conclusion, above stated, that the payments were not for services rendered or in consideration of the covenant against competition. On the whole record we conclude that the weekly payments to Runyon's widow were an integral part of the purchase price of the agency and were neither compensation for services nor made in support of the covenant not to compete. Decision will be entered under Rule 50.